**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARTIN CONNORS and
CATHERINE SABFULSKI,

    Plaintiffs,

        v.

LORI CONNORS, ROBERT PACE,
DEBORAH PARKER, DAVID LUPAS,
JACKIE CARROLL, NANCY VIOLI,
MICHAEL DESSOYE, KATHY JO
WINTERBOTTOM and LISA CHRISTIE,

    Defendants.

CIVIL ACTION NO. 3:07-CV-2186

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are three motions for summary judgment: (1) Defendants Michael Dessoye ("Dessoye") and David Lupas's ("Lupas") Motion for Summary Judgment (Doc. 67); (2) Defendants Lori Connors and Robert Pace's ("Pace") Motion for Summary Judgment (Doc. 75); and (3) Defendant Kathy-Jo Winterbottom's ("Winterbottom") Motion for Summary Judgment (Doc. 87). For the reasons discussed below, these motions will be granted in part and denied in part. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental).

## BACKGROUND

**I.    Factual Background**

Plaintiff Martin Connors was at all relevant times a Trooper for the Pennsylvania State Police. (Pl. Martin Connors Dep. 6:15-25, May 7, 2009.) Deborah Parker ("Parker") was at all relevant times a detective with the Luzerne County District Attorney's Office. (Parker Dep.

9:2-8, Aug. 19, 2008.)  Dessoye was at all relevant times the Chief of Luzerne County Detectives.  (Dessoye Dep. 8:13-18, May 8, 2009.)  Nancy Violi was at all relevant times an assistant district attorney for Luzerne County.  (Nancy Violi Dep. 10:13-18, Aug. 18, 2008.)  Lupas was at all relevant times the Luzerne County District Attorney.  (Lupas Dep. 5:9-19.)  Winterbottom was at all relevant times an internal affairs investigator for the Pennsylvania State Police ("PSP").  (Kathy-Jo Winterbottom Dep. 13:8-14, Sept. 30, 2008.)

Martin and Lori Connors were married June 7, 1997.  (Pl. Connors Dep. 18:13-17.)  Together they had one child, a daughter.  (Pl. Connors Dep. 18:18-23.)  On or around January 25, 2004, the Connors separated.  (Def. Connors Dep. 7:19-25, Mar. 16, 2009.)  Upon separation, Plaintiff Connors left the family's home.  (Def. Connors Dep. 11:21-23.)  They agreed that their daughter would stay with Defendant Connors and that their daughter would have visits with Plaintiff Connors.  (Def. Connors Dep. 27:10-18.)  Also as part of the separation, a computer owned jointly by the Connors was left with Defendant Connors so that their daughter could use it.  (Pl. Connors Dep. 26:1-6, 37:11-38:1.)  The separation was caused, at least in part, due to Plaintiff Connors having an affair with Plaintiff Catherine Sabulski ("Sabulski").[1]  (Sabulski Dep. 7:11-13, May 8, 2009.)  During that affair, Plaintiffs communicated via e-mail and Plaintiff Connors took a number of sexually explicit photographs of Sabulski.  (Sabulski Dep. 6:19-25.)  These messages and images were later found on the computer jointly owned by the Connors.  (Sabulski Dep. 6:19-25.)  The computer also allegedly contained sexually explicit images of other women, including Defendant Connors.  (Sabulski Dep. 7:3-10.)  The computer was ultimately given to Pace,

---

[1] Plaintiff Catherine Sabulski is erroneously identified in the caption as Catherine Sabfulski.  (Def. Connors Dep. 9:12-24.)

2

Defendant Connors's father, for safe keeping. (Supplemental Police Report, Doc. 68, Ex. D.)

Sometime in 2005, Luzerne County officials began to investigate allegations that Plaintiff Connors had abused his daughter, based upon information provided to them by the daughter's principal. (Parker Dep. 10:10-18.) Defendant Connors reported that her daughter had made comments about being inappropriately touched by Plaintiff Connors. (Def. Connors Dep. 29:20-30:4.) Defendant Connors had her daughter examined by a pediatrician, who told her that by law either she or the doctor would need to report the allegations to the authorities. (Def. Connors Dep. 45:22-46:19.) Defendant Connors met with the Kingston Police, and then later with Detective Parker. (Parker Dep. 21:7-10.) When Parker, along with Children and Youth Worker Heather Finnegan, interviewed the daughter she made no allegations of inappropriate touching by Plaintiff Connors. (Parker Dep. 31:5-11.) The daughter also did not speak of any abuse at a second interview. (Parker Dep. 35:2-3.) Similarly, a physical investigation also did not yield any evidence of abuse. (Parker Dep. 32:13-16.) At the time of the first interview, Pace brought Detective Parker a folder containing the explicit e-mails and images by the Plaintiffs, but Parker rejected it because she felt it did not deal with the child molestation issues being investigated. (Parker Dep. 39:20-40:4.) Pace later stated, or attempted to state, to Kelly Yanchulis and Father Dan Hitchko that he believed Plaintiff Connors abused his daughter. (Pl. Connors Dep. 128:9-18, 136:9-16.)

While the investigation was proceeding, a meeting was held on October 20, 2005, with Pace, Lupas, Violi, Dessoye, Parker, and Jackie Musto Carroll, another assistant district attorney, in attendance. (Dessoye Dep. 12:2-6.) Pace came into the meeting as a

3

concerned grandfather with a bit of a vendetta against Plaintiff Connors.  (Dessoye Dep. 100:19-23.)  At the meeting Pace again brought forward the folder containing the sexually explicit images and e-mails that Pace stated he had recovered from the Connors' computer. (Parker Dep. 120:5-22.)  Of the forty-seven (47) images brought by Pace, four (4) depicted conduct of unidentified individuals near a Motorola radio similar to those used in state police vehicles.[2]  (Pl. Connors Dep. 41:9-18.)  The remaining pictures were of Plaintiff Sabulski and "had nothing to do with" any criminal conduct.  (Dessoye Dep. 104:7-14.)  Pace also stated that he thought there was child pornography on the computer, and that the police should examine the folder's contents and the computer.  (Supplemental Police Report, Doc. 68, Ex. D.)  Pace admitted at the meeting that he realized the Connors' daughter did not mean that Plaintiff Connors had abused her, but he requested that Plaintiff Connors should be investigated anyway because he was not fit to be a trooper or a father.  (Parker Dep. 99:5-13.)  The other Defendants at the meeting explained to Pace that the sole purpose of the investigation was to investigate the abuse allegations, and that any other improprieties would have to be investigated by the PSP.  (Parker Dep. 56:6-19.)

It was agreed, however, that it was important to at least review the evidence presented by Pace and to investigate the allegations of child pornography.  (Dessoye Dep. 107:10-108:6.)  Because the allegations of child pornography on the Connors' computer could be relevant to the molestation investigation, Parker spoke with Violi about seizing the

---

[2] For the purposes of the present motion, it is sufficient to consider the four (4) images as containing unidentified persons. Plaintiffs deny that they are in those images (Pl. Connors Dep. 41:9-18) and those images were never found on the Connors' computer (Doc. 76, Ex. P at 6). The only evidence on the record is that these images were included in the folder provided by Pace to the Luzerne County law enforcement officials.

4

computer. (Parker Dep. 42:3-22.) The computer had been in the possession of Defendant Connors or Pace for approximately two (2) years. (Parker Dep. 17:12-16.) Because it had been out of Plaintiff Connors's possession for so long, Violi told Parker that Defendant Connors alone could consent to search it. (Parker Dep. 42:18-22.) After obtaining Defendant Connors's consent (Doc. 76, Ex. I), Parker, along with Detective Becky, seized the computer. (Parker Dep. 44:9-10.) The computer was turned over to Agent Mullins of the FBI for forensic evaluation. (Dessoye Dep. 32:16-23.) After evaluating the files on the computer for child pornography, the FBI found one questionable file, but stated that it could not be determined "when it was downloaded or who downloaded it or if it could have been an accidental [download]." (Parker Dep. 15:18-16:4.) After receiving this report, Dessoye requested PSP Trooper Murphy evaluate the computer to see if the forty-seven (47) sexually explicit images could be found. (Doc. 76, Ex. P at 6.) There was never any distribution or evaluation of any other images found on the Connors' computer. (Sabulski Dep. 7:3-20.)

Subsequent to the county's investigation, Plaintiff Connors was investigated for misconduct by the PSP. Lupas instructed Dessoye and Parker to forward the information to the State Police as to things that may have occurred either in a police vehicle or at the job site, and they forwarded all of the materials from the folder provided by Pace. (Parker Dep. 67:24-66:3.) Plaintiff Connors was placed on restricted duty pending an investigation conducted by Winterbottom. (Pl. Connors Dep. 7:16-22.) Winterbottom filed a report with Plaintiff Connors's superiors including attached copies of all forty-seven (47) images reviewed. (Winterbottom Dep. 52:9-17.) Ultimately, Plaintiff Connors's superior, Captain Kenneth Hill, found the allegations to be unfounded and Plaintiff Connors was returned to full duty. (Kenneth Hill Dep. 10:24-11:8, Aug. 3, 2009.)

## II.     Procedural Background

Plaintiffs filed their complaint in the United States District Court for the Middle District of Pennsylvania on November 30, 2007. (Doc. 1.) Defendants Deborah Parker, Jackie Musto Carroll, Nancy Violi, and Lisa Christie were released by stipulation on March 19, 2010. (Doc. 83.) The remaining Defendants have filed the present motions for summary judgment. (Docs. 67, 75, 87.) These motions have been fully briefed by the parties, and are now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

6

PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Plaintiffs bring several claims under § 1983 against the Defendants for violations of their constitutional rights, as well as state law claims for defamation and civil conspiracy. Plaintiff Martin Connors's remaining claims allege the following: (1) all Defendants violated his First Amendment rights by retaliating against him for seeking custody of his daughter; (2) Defendants Connors, Pace, and Dessoye violated his Fourth Amendment rights by seizing

7

his computer without a warrant; (3) all Defendants violated his substantive due process privacy rights; (4) all Defendants conspired to violate his rights; (5) Defendants Connors, Pace, and Winterbottom defamed him; and (6) Defendants Connors, Pace, and Winterbottom entered into a civil conspiracy to defame him. Plaintiff Sabulski alleges that all Defendants violated her substantive due process privacy rights by distributing explicit images of her. I will evaluate these claims seriatim.

**I.  § 1983 Claims**

Section 1983 provides redress for individuals whose constitutional rights are violated as a result of governmental authority.[3] "To establish a claim under § 1983, a plaintiff must allege (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under color of state law." *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir.1997). I will first consider whether each of the Defendants acted under color of state law, then examine whether there is evidence to support each alleged deprivation of a federal right.

A. Under Color of State Law

Plaintiffs argue that all of the Defendants acted under color of state law. Under the traditional definition of "acting under color of state law," the defendant must have "exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *David v. City and County of Denver*, 101 F.3d 1344, cert denied 522 U.S. 858 (10th Cir. 1996). As a threshold matter, the parties do not dispute that

---

[3] 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

8

Defendants Dessoye, Lupas, and Winterbottom were governmental officials and that they acted under color of state law. The parties also do not dispute that Connors and Pace, as private citizens, could not independently act "under color of state law." Instead, Plaintiffs correctly argue that "a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). Therefore, to determine if Connors and Pace acted under color of state law, I must examine whether there is evidence supporting Plaintiffs' claim of a conspiracy between Defendants Connors and Pace and any of the remaining Defendants.

Defendants argue that there is no evidence on the record from which a reasonable jury could find that a conspiracy existed between Defendants Connors and Pace and the remaining governmental actors. "'To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Williams v. Fedor*, 69 F. Supp.2d 649, 666 (M.D. Pa. 1999) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). Agreement may be shown by direct or circumstantial evidence. *Adams v. Teamsters Local 115*, 214 Fed. Appx. 167, 172 (3d Cir. 2007) (citing *Ball v. Paramount Pictures*, 169 F.2d 317, 319-20 (3d Cir. 1948) (holding that a "conspiracy may be inferred when the concert of action 'could not possibly be sheer coincidence'")). Plaintiffs provide no direct evidence of agreement, therefore, I must examine whether there is circumstantial evidence from which a reasonable jury could infer agreement.

9

Plaintiffs argue that agreement can be inferred from the actions of Lupas and Dessoye, beyond their roles in the criminal investigation, that were in concert with the actions of Defendants Connors and Pace. There is evidence on the record that Dessoye had the PSP Trooper Brian Murphy search the Connors' computer for the forty-seven (47) explicit pictures provided by Pace. (Doc. 76, Ex. P at 6.) This could demonstrate concerted action because these images were not relevant to the Luzerne County criminal investigation, and indeed this search was conducted even the FBI found that there was insufficient evidence of child pornography. (Doc. 76, Ex. P at 6; FBI Report, Doc. 76, Ex. J.) Furthermore, Dessoye admitted that forty-three (43) of the images were of Plaintiff Sabulski and "had nothing to do with" any improper conduct (Dessoye Dep. 104:7-14), so there would be no reason to search the computer for those forty-three (43) files. There is also evidence on the record that while Defendants Lupas and Dessoye examined the images provided by Pace, they never examined or reviewed any other explicit images found on the Connors' computer, focusing instead only on the images of Sabulski provided by Pace. (Sabulski Dep. 7:3-20.) Considering this evidence in the light most favorable to the Plaintiffs, there is sufficient evidence that a jury could reasonably determine Dessoye and Lupas took concerted action with Defendants Connors and Pace, demonstrating an agreement to violate the Plaintiffs' rights. If a jury finds that this type of conspiracy existed, then Defendants Connors and Pace also acted under color of state law.

B. Violations of Constitutional Rights

The Court must next evaluate alleged violations of the Plaintiffs' First, Fourth, and Fourteenth Amendment rights.

1. First Amendment

Plaintiff Connors alleges that his First Amendment rights were violated when the Defendants retaliated against him for seeking custody of his daughter. To establish a First Amendment retaliation claim, a plaintiff must prove: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006). Defendants do not challenge that the right of access to the courts to seek custody of Plaintiff Conners's daughter is protected conduct. Instead, they argue that there is no evidence of a causal link between the "retaliatory action" and this conduct. As stated above, there is sufficient evidence to permit a reasonable jury to find that a conspiracy between Defendants Connors, Pace, Dessoye, and Lupas, therefore, a jury could also find that their conduct was in retaliation for Plaintiff Connors's attempts to obtain custody. *See supra* I.A. As to Defendant Winterbottom, however, there is no evidence that she was part of a conspiracy or that her investigation was in retaliation for Plaintiff Connors's protected conduct. Defendant Winterbottom's motion for summary judgment on the First Amendment claim will be granted, and the remaining motions will be denied.

2. Fourth Amendment

Plaintiff Connors alleges that his Fourth Amendment rights were violated when the Defendants searched and seized the Connors' jointly owned computer without a warrant. The Fourth Amendment protects individuals against unreasonable search and seizure by the government. U.S. CONST. amend. IV. Seizure of the computer, without warrant or other applicable exception, could establish cause of action against those persons who conducted

11

the seizure, ordered the seizure, or potentially for those who did not intervene. *Friedland v. Fauver,* 6 F. Supp.2d 292, 302-03 (D.N.J. 1998). Here, the evidence shows that the seizure was conducted by Parker after communicating with Violi. (Parker Dep. 44:9-10.) Parker and Violi, however, have been voluntarily dismissed from the present action. (Doc. 83.) Plaintiffs fail to present any evidence that Defendants Dessoye or Lupas ordered or conducted the seizure.[4] The fact that Dessoye and Lupas were superiors to Parker and Violi, respectively, is insufficient to establish liability for the violations of Plaintiff Connors's Fourth Amendment rights. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely upon the operation of respondent superior."). Because there is no evidence that the remaining Defendants were personally involved in the seizure of the computer, the motions for summary judgment will be granted on this claim.

3. Fourteenth Amendment (substantive due process)

Plaintiffs also allege that their constitutionally protected privacy rights were violated when their explicit images were given by Defendants Dessoye and Lupas to the PSP, and that their rights were violated again when those images were attached to the PSP report.[5] To prevail on such a claim, a plaintiff must first establish that the privacy right at issue is a

---

[4] Fourth Amendment seizure claims against Winterbottom were dismissed in this Court's May 7, 2008, Memorandum and Order. (Doc. 31 at 9.)

[5] While Plaintiffs claim their privacy rights were violated under the Fourth and Fourteenth Amendments (Compl. ¶¶ 45, 48), and Defendants Dessoye and Lupas argue that the privacy claim "is properly analyzed under the Fourth Amendment" (Bf. in Supp. at 32, Doc. 69), the disclosure of private information clearly falls under the Fourteenth Amendment's Substantive Due Process Clause. *Sterling v. Borough of Minersville*, 232 F.3d 190, 195 (3d Cir. 2000).

fundamental one. *Doe v. Southeastern Penn. Transp. Auth.*, 72 F.3d 1133, 1137 (3d Cir. 1995). The Third Circuit Court of Appeals has taken "an encompassing view of information" that is protected, and such protected information is protected from disclosure by the state absent an overriding legitimate interest in its disclosure. *Sterling v. Borough of Minersville*, 232 F.3d 190, 195-96 (3d Cir. 2000). The court has also stated that it is improbable that the government would have a legitimate interest in the disclosure of one's sexuality or sexual proclivities. *Id*. at 196. Plaintiffs concede that their right of privacy may only be violated for the images containing them, not merely for images containing the other.[6] (Bf. in Opp'n 6, Doc. 95.)

In *DePiano v. Atlantic County*, No. Civ. 02-5441, 2005 WL 2143972 (D.N.J. Sept. 2, 2005), the District Court for New Jersey addressed a similar claim. In that case, the plaintiff was an employee of the Atlantic County Justice Facility ("ACJF"). *Id.* at *1. The warden of ACJF distributed photographs of the plaintiff cross-dressing which were found in plaintiff's internal affairs file. *Id.* at *3. The plaintiff presented evidence that the images were "haphazzardly" disseminated amongst guards and possibly members of the prison population without any legitimate reason. *Id.* at *12. After reviewing the evidence presented, the court denied the warden's motion for summary judgment. *Id.* at *13. Here, as in *DePiano*, private images of a sexual nature were distributed by government officials. Unlike *DePiano*, however, in the present case there may have been a legitimate governmental interest in each of the distributions. If, as asserted by Defendants, the distribution of the images was merely to further the PSP investigation, then this would be a legitimate

---

[6] It is unclear from the record presented whether the forty-three (43) sexually explicit images are of Plaintiff Connors or Sabulski or some combination of the two.

government interest and Plaintiffs' rights would not have been violated. As to Defendants Connors, Pace, Dessoye, and Lupas, genuine issues of material fact remain as to whether the distribution was for this legitimate purpose, or if it was instead to further the conspiracy to harm Plaintiffs. *See supra* Part I.A. As to Defendant Winterbottom, however, there is no evidence that the attachment of the images to her report was for any purpose other than the legitimate purpose of completing the internal affairs investigation. Therefore, as to Plaintiffs' claims for substantive due process violations, Defendant Winterbottom's motion for summary judgment will be granted and the remaining motions will be denied.

    4. Qualified Immunity

Defendants Dessoye and Lupas also argue that they are entitled to qualified immunity. To determine if the Defendants are shielded by qualified immunity, the Court must apply the two-part test set forth in *Saucier v. Katz*, 553 U.S. 194 (2001): (1) has a constitutional right been violated; and (2) whether the right violated was clearly established. *Saucier*, 553 U.S. at 201. Whether a violation of Plaintiffs' First Amendment and substantive due process rights has occurred is unclear at this time, but the Court need not examine the *Saucier* elements in the stated order. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Defendants fail to satisfy the second element as to the claim of First Amendment retaliation because this type of claim is well established. *See Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006). As to the substantive due process claims, it is clearly established that the Defendants could not intentionally release the images of Sabulski without any legitimate purpose, but genuine disputes of fact remain as to the justification for the release.

14

*Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000).[7]  Defendants' motion for summary judgment on grounds of qualified immunity will be denied.

**II.     State law claims**

   A.  Political Subdivision Tort Claims Act Immunity

Defendant Winterbottom argues that she is immune from all state law claims pursuant to Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA").  42 PA. CONS. STAT. § 8541, *et seq*.  As this Court stated in its prior opinion, Defendant Winterbottom would be entitled to PSTCA immunity if her actions were "within the scope of [her] office or duties." *Id*. § 8545.  As stated above, Plaintiffs present no evidence that Winterbottom was part of the alleged conspiracy to harm Plaintiffs or took any actions outside her role as a PSP internal affairs investigator.  Even in the light most favorable to the Plaintiffs, all of Winterbottom's actions were within the scope of her official duties, and therefore, she is immune from the state law causes of action.  Winterbottom's motion for summary judgment as to each of the state law claims will be granted.

   B.  Defamation

Plaintiff Connors alleges that Defendants Connors and Pace acted to defame him. Plaintiffs concede that statements made to the authorities may not form the basis of a defamation claim.  *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991).  As to Defendant Connors, there is no evidence of any defamatory statements other than those to

---

[7] If the Defendants released the images only to advance the PSP investigation and it was later held that this was not a legitimate interest, then qualified immunity might apply because the contours of a legitimate government interest are not as well defined.  As I have already found that such a release would be a legitimate interest, I need not resolve this issue.

15

the authorities. Because there is only evidence of these protected statements, Plaintiff Connors fails to present sufficient evidence in support of his defamation claim against Defendant Connors. As to Defendant Pace, however, there are material questions of fact as to defamatory statements made to Kelly Yanchulis and Father Dan Hitchko. (Pl. Connors Dep. 128:9-18, 136:9-16.) Defendants argue that Plaintiffs present insufficient evidence in support of this claims because the evidence currently on the record is inadmissible hearsay. The Third Circuit Court of Appeals has held that inadmissible evidence can be considered on summary judgment, so long as it is capable of being presented in an admissible form at the time of trial. *Petruzzi IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1234 n.9 (3d Cir. 1993). Plaintiffs could present the non-hearsay evidence of witnesses who directly heard such statements at trial. Therefore, Plaintiff Connors presents sufficient evidence to support his defamation claim against Pace. The motion for summary judgement by Defendants Pace and Connors will be granted as to the defamation claim against Defendant Connors, and denied as to the claim against Pace.

    C. Civil Conspiracy

Plaintiff Connors also alleges that Defendants Connors and Pace conspired to defame him. To have a claim for civil conspiracy under Pennsylvania law, a plaintiff must show:

> (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.

*McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000). Moreover, if there is no civil cause of action for a particular act, there can be no cause of action for

16

conspiracy to commit that act. *Id.* As stated above, genuine disputes of material fact remain as to defamation by Pace. And just as there is sufficient evidence to support Plaintiffs' claims of a conspiracy, *see supra* Part I.A., there is evidence of concerted action by Pace and Connors, such as when they both brought the Connors' daughter to be interviewed (Parker Dep. 31:5-11 39:20-40:4) or the transfer of the Connors' computer to Pace (Supplemental Police Report, Doc. 68, Ex. D). Defendants Connors and Pace's motion for summary judgment on this claim will be denied.

## CONCLUSION

The pending motions for summary judgment will be granted in part and denied in part as discussed above. Summary judgment will be granted as to all claims under the Fourth Amendment, because none of the remaining Defendants took any personal action in seizing the Connors' computer. Summary judgment will also be granted as to all remaining claims against Defendant Winterbottom because there is no evidence she conspired or otherwise acted to violate Plaintiffs' rights, and because she is entitled to immunity from state law claims under the PSTCA. 42 PA. CONS. STAT. ANN. § 8545. Finally, summary judgment will be granted as to the defamation claim against Defendant Connors, as the evidence only demonstrates that she made statements to the authorities. As to all other claims, the motions for summary judgment will be denied.

An appropriate order will follow.

| | |
|---|---|
| June 1, 2010 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARTIN CONNORS and
CATHERINE SABFULSKI,

    Plaintiffs,

        v.

LORI CONNORS, ROBERT PACE,
DEBORAH PARKER, DAVID LUPAS,
JACKIE CARROLL, NANCY VIOLI,
MICHAEL DESSOYE, KATHY JO
WINTERBOTTOM and LISA CHRISTIE,

    Defendants.

CIVIL ACTION NO. 3:07-CV-2186

(JUDGE CAPUTO)

## ORDER

**NOW**, this   1st   day of June, 2010, **IT IS HEREBY ORDERED** that:

(1) Defendants Michael Dessoye and David Lupas's Motion for Summary Judgment (Doc. 67) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (a) As to all claims for violations of Plaintiffs' Fourth Amendment rights, the motion is **GRANTED**.

    (b) As to the remainder, the motion is **DENIED**.

(2) Defendants Lori Connors and Robert Pace's Motion for Summary Judgment (Doc. 75) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (a) As to all claims against Lori Connors and Robert Pace for violations of Plaintiffs' Fourth Amendment rights, the motion is **GRANTED**.

    (b) As to claims for defamation against Lori Connors, the motion is **GRANTED**.

    (c) As to the remainder, the motion is **DENIED**.

(3) Defendant Kathy-Jo Winterbottom's Motion for Summary Judgment (Doc. 87) is **GRANTED**.

          /s/ A. Richard Caputo
          A. Richard Caputo
          United States District Judge